

## Missouri Court of Appeals
### Western District

CHRISTINA LYNN GOLDSTEIN, MD, ET AL., )
)
) WD86587
Relators, )
v. ) OPINION FILED:
)
THE HONORABLE KEVIN CRANE, ) February 27, 2024
JUDGE OF THE CIRCUIT COURT OF )
BOONE COUNTY, MISSOURI, )
DIVISION THREE, )
)
Respondent. )
)

## ORIGINAL PROCEEDING IN PROHIBITION

**Before Writ Division: Thomas N. Chapman, Presiding Judge,
Alok Ahuja, Judge, and W. Douglas Thomson, Judge**

Relator Christina Koshak ("Koshak")[1] petitions this court for a writ of prohibition

to prevent the release of her medical records. Koshak argues that the circuit court erred

in ordering the release of her medical records because her medical records were protected

by the physician-patient privilege. Because we find that Koshak did not waive the

---

[1] Koshak's surname changed from Goldstein to Koshak after the underlying suit was filed.

physician-patient privilege, the circuit court erred in granting Plaintiff's Second Request for Production No. 4. Our preliminary writ is now made permanent.

## Background

Plaintiff Bruce Cox ("Cox") filed a four-count petition for damages in the Circuit Court of Callaway County. Two of the counts asserted medical negligence against Koshak relating to two surgeries performed in April and May of 2019. Cox alleged that Koshak failed to properly place hardware during surgery and that the improperly placed hardware caused Cox severe and permanent injury to his spine. The petition also alleged that Koshak knew that she suffered from a medical condition that prevented her from safely performing surgeries.

In September of 2021, a motion for change of venue was granted and the cause was transferred to the Circuit Court of Boone County.

During the course of discovery, a deposition was taken of Cox in August of 2022. Cox indicated that, while receiving an MRI, he had been informed by an individual that Koshak had "carpal tunnel," which he thought might have affected her ability to perform his surgeries.

On December 5, 2022, a deposition was taken of Koshak. In response to questions by opposing counsel, Koshak stated that she had been diagnosed with carpal tunnel syndrome and that she had bilateral carpal tunnel release surgery in May of 2019. Koshak was then asked a further question regarding the symptoms or issues she had leading up to her surgical procedures.

2

[Plaintiff's counsel]: Okay. And can you tell us, what types of symptoms or issues were you having that sort of led to your need to have those surgical procedures?

[Defense Counsel]: At this point, I guess I've got to object. It really gets into private medical issues and, you know, I don't know that there's a real relevance to any claim in this case. I have given you fairly substantial leeway, but I don't think we're going to open up her whole medical history to, you know, to examination in this case. I mean, I don't have a problem if you ask her if she thinks her carpal tunnel limited her ability to perform surgery or something like that, but as we get into details, I don't know that you're entitled to details. I certainly would object to producing any records of any surgery or health care related to that.

Plaintiff's counsel then stated that he would re-ask the question.

[Plaintiff's counsel]: I'm not asking for any medical records at this point. What I'm asking is; you had this – you had your carpal tunnel procedures in May of 2019, and what I would like to know is in April of 2019 or in, you know, in the months leading up to the procedure, what type of symptoms were you having that led to the conclusion that you needed these procedures.

[Defense Counsel]: Well, I mean, I guess to the extent it would be something that you consider relevant to your ability to perform the surgery on Mr. Cox, it's probably something he can ask about, but otherwise no.

Koshak was then asked numerous questions regarding her symptoms and whether they affected her ability to perform surgery. Koshak provided answers to these questions.

Cox later served Plaintiff's Second Request for Production, which was directed toward Koshak. Request No. 4 requested from Koshak:

4. A signed medical authorization for each medical provider who provided you with care, treatment or evaluation for medical conditions related to your right or left hands, including the diagnosis of carpal tunnel syndrome, limited to the months of March, April and May of 2019, and limited to the body parts of your right and left hands.

Koshak's response to this request stated:

> OBJECTION. Defendant objects to this request on the grounds that it seeks personal health information of the Defendant that is protected by physician-patient privilege, is not reasonably calculated to lead to discoverable evidence, is not proportional to the needs of the case, and is overly broad and unduly burdensome.

Cox filed a notice calling for a hearing on Koshak's objections to Plaintiff's Second Request for Production. Koshak then filed a motion for a protective order that asserted that her medical records were protected by the physician-patient privilege. The motion requested that the circuit court sustain Koshak's objections to Plaintiff's Second Request for Production No. 4 and requested a protective order "precluding any discovery concerning her medical condition from her treating physicians[.]" Cox filed suggestions in opposition to Koshak's objections and request for a protective order.

By docket entry dated September 5, 2023, the circuit court indicated that a hearing had been held, and the circuit court granted Cox's request for production over Koshak's objection.

Koshak then petitioned this court for a preliminary and permanent writ of prohibition requesting that this court sustain Koshak's objection to Cox's discovery request regarding Koshak's medical records and that we enter a protective order precluding any discovery concerning Koshak's medical condition.

On November 13, 2023, this court issued a preliminary writ of prohibition and commanded the circuit court to take no further action to enforce the discovery order at issue, other than vacating said order, until final disposition of the writ proceedings.

4

## Standard of Review

Article V, section 4 of the Missouri Constitution provides us with jurisdiction to "issue and determine original remedial writs."

> A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Lutman v. Baker*, 635 S.W.3d 548, 551 (Mo. banc 2021) (quoting *State ex rel. Becker v. Wood*, 611 S.W.3d 510, 513 (Mo. banc 2020)). "Specifically, prohibition is an appropriate remedy when a party is ordered to produce material that is protected from discovery by some privilege." *Id.* (internal quotations, brackets, and citation omitted).

## Analysis

As relevant, section 491.060[2] provides:

> The following persons shall be incompetent to testify:
>
> . . . .
>
> (5) A physician licensed pursuant to chapter 334, a chiropractor licensed pursuant to chapter 331, a licensed psychologist or a dentist licensed pursuant to chapter 332, concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient as a physician, chiropractor, psychologist or dentist.

---

[2] Unless otherwise indicated, statutory references are to RSMo 2016.

5

Although section 491.060(5) addresses competence to testify, it has been "construed as a privilege statute." *Lutman*, 635 S.W.3d at 551 (quoting *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 (Mo. banc 2006)). "Any information a physician acquires from a patient while attending the patient and which is necessary to enable the physician to provide treatment is privileged." *Id.* (quoting *State ex rel. Jones v. Syler*, 936 S.W.2d 805, 807 (Mo. banc 1997)). The privilege applies to medical records. *Id.* "[E]ven when medical records are directly relevant to a party's claims, if they are protected by the privilege, they are not discoverable." *Id.*; *see also State ex rel. Barks v. Pelikan*, 640 S.W.3d 105, 110 (Mo. banc 2022) (recognizing that the privilege is always invoked at the expense of truth-seeking, but is a privilege set by statute). "The purpose of the physician-patient privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communication between patient and physician, free from fear of the possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information." *Lutman*, 635 S.W.3d at 551 (quoting *Dean*, 182 S.W.3d at 567).

However, the physician-patient privilege is not absolute, and "[t]he fact that documents fall within the scope of the physician-patient privilege does not end the inquiry." *Id.* at 551-52 (quoting *State ex rel. Health Midwest Dev. Grp., Inc. v. Daugherty*, 965 S.W.2d 841, 844 (Mo. banc 1998)). The privilege may be waived, either expressly or impliedly. *Id.* at 552. One common form of waiver occurs when plaintiffs "voluntarily place their medical condition in issue by filing a petition alleging that they

6

suffered physical or mental injuries." *Id.* (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo. banc 1999)). A defendant can also be found to have waived the privilege by placing his or her medical condition in issue. *See, e.g., State v. Baumruk*, 364 S.W.3d 518, 532 (Mo. banc 2012) (criminal defendant waived physician patient privilege by putting his mental condition at issue by arguing at trial that he was not guilty by reason of mental disease or defect). "A party may also impliedly waive the privilege through an act showing a clear, unequivocal purpose to divulge the confidential information." *Rodriguez*, 996 S.W.2d at 63 (internal quotations and citation omitted). "If the privilege is waived, the opposing party may discover the medical records that reasonably relate to the physical conditions at issue." *Id.*

In this matter, there is no disagreement that Koshak's medical records would be protected by the physician-patient privilege. Thus, the only question before us is whether Koshak waived the physician-patient privilege. Koshak argues that she did not waive the physician-patient privilege. Cox argues that Koshak waived the privilege by providing deposition testimony that placed her condition in issue and by disclosing information about her medical condition to a co-worker.

Regarding Cox's arguments that Koshak placed her medical condition in issue in the litigation, we disagree. Koshak did not place her medical condition in issue through her pleadings. Rather, it was Cox's petition that sought to place Koshak's medical condition in issue from the very beginning of the litigation by alleging that Koshak had a medical condition that prevented her from safely performing surgery. Koshak did not

7

place her medical condition in issue merely by denying Cox's allegations and attempting to defend against the suit. *See State ex rel. Stinson v. House*, 316 S.W.3d 915, 918 (Mo. banc 2010) (citing *Rodriguez*, 996 S.W.2d at 63).

Regarding Cox's argument that Koshak waived the physician-patient privilege by discussing her condition at her deposition, we disagree. In order for a disclosure to constitute a waiver, the disclosure must be voluntary. *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590, 594 (Mo. App. W.D. 1990). A patient does not waive the privilege through testimony elicited by examination by the opposing party as such a disclosure lacks the voluntariness required for waiver. *Id.*; *see also State ex rel. DeGraffenreid v. Keet*, 619 S.W.2d 873, 878 (Mo. App. S.D. 1981) ("[I]n order for it to be held that a party has waived the confidential privilege in question, his waiver must be voluntary which is not the case . . . when it is extorted under cross-examination by opposing counsel either at a deposition or at a trial."); *Rodriguez*, 996 S.W.2d at 64 (citing *Hayter*, 785 S.W.2d at 594, with approval and noting that responses to questions on cross-examination are considered involuntary). In this matter, all of the deposition responses that Cox argues constituted a waiver of the privilege involved Koshak's responses to questions asked by opposing counsel rather than Koshak's counsel. Accordingly, such responses do not constitute a waiver of the physician-patient privilege.

Additionally, Koshak's deposition responses do not show an unequivocal purpose to waive the physician-patient privilege. Koshak made clear during the course of the deposition that Koshak did not wish to waive the physician-patient privilege, stating that

such information was private and that she would object to the production of her medical records. Koshak did not waive the physician-patient privilege by providing responses to opposing counsel's inquiries.

Regarding the fact that Koshak disclosed certain information regarding her medical condition to a co-worker, we first note that the record does not indicate precisely what Koshak may have revealed to her coworker. In her deposition, Koshak acknowledged that her coworker would have been aware of her medical condition, as she and her coworker were friends and discussed things that occurred in their respective lives. Cox has not cited any authority indicating that a person waives the physician-patient privilege by discussing the basic facts of a medical condition with a friend. We do not find that Koshak waived the physician-patient privilege by discussing general information about her medical condition with a co-worker. Persons undergoing medical treatment can regularly be expected to seek support from friends and family and in doing so may disclose certain basic details about their medical condition. To find that a person waives the physician-patient privilege by disclosing any information regarding a person's medical condition to friends or family so as to make a patient's medical records discoverable would defeat the purpose of section 491.060(5). Although disclosures made to third parties are not protected by the physician-patient privilege as they are not information provided to a physician for the purposes of enabling treatment, *see Lutman*, 635 S.W.3d at 551, we do not find that general discussions with friends or family waive the physician-patient privilege so as to make the information that is protected by the

9

privilege (including medical records and information provided to a physician for the purpose of enabling treatment) discoverable. *See id.* at 553 (mere admission of a medical condition does not constitute waiver).[3]

The physician-patient privilege applies to Koshak's medical records. *See id.* at 551. Because Koshak has not waived the physician-patient privilege so as to make her medical records discoverable, we hold that the circuit court erred in granting Plaintiff's Second Request for Production No. 4, which requested a signed medical authorization for each of Koshak's medical providers that provided her with care related to her hands. This holding should not be read to suggest that Koshak cannot subsequently waive the privilege; however, at this juncture in the litigation, Koshak has not acted in a manner "showing a clear, unequivocal purpose to divulge the confidential information." *See Rodriguez*, 996 S.W.2d at 63.

In her writ petition, Dr. Koshak also requested that we direct the circuit court to "enter a Protective Order precluding any discovery concerning Dr. Koshak's medical condition." We decline to order entry of the broad protective order Dr. Koshak seeks, because it would reach more broadly than the information protected by section 491.060(5). The statute protects from disclosure "any [treatment-related] information which [a health care professional] may have acquired from any patient while attending

---

[3] *Lutman* also cited cases from other jurisdictions with approval, noting that other state courts have held that disclosing basic facts about treatment, addiction, or the existence of a physician-patient relationship is insufficient to establish a waiver. *Lutman*, 635 S.W.3d at 553 n.6 (citations omitted).

the patient in a professional character" – it does not address whether information concerning a litigant's underlying physical condition may be discovered from other sources, if information concerning the condition otherwise falls within the scope of discovery under Rule 56.01(b). Nothing in our opinion should be read to address whether Cox may obtain discovery of Dr. Koshak's physical condition through mechanisms other than seeking records from Dr. Koshak's treating physicians, including by inquiry of Dr. Koshak herself.

## Conclusion

The preliminary writ of prohibition is made permanent.

_____
Thomas N. Chapman, Presiding Judge

All concur.

11