*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALVIN KENNEDY and ELIEZER FELICIANO, | ) ) ) | Supreme Court No. S-14762 |
| Petitioners, | ) ) | Superior Court No. 3AN-10-08865 CI |
| v. | ) ) | O P I N I O N |
| MUNICIPALITY OF ANCHORAGE, | ) ) | No. 6809 - August 16, 2013 |
| Respondent. | ) ) ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Kenneth W. Legacki, Anchorage, for Petitioners. Linda J. Johnson, Clapp, Peterson, Tiemessen, Thorsness & Johnson, LLC, Anchorage, Todd K. Sherwood, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Respondent. Jeffrey J. Barber, Barber & Banker, LLC, Anchorage, for Amicus Curiae Alaska Association for Justice.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating.]

BOLGER, Justice.

## I. INTRODUCTION

Two former police officers brought claims against the Municipality of Anchorage for racial discrimination, alleging a hostile work environment in violation of

state law. The officers claimed damages for mental anguish, and the Municipality sought discovery concerning the nature of their mental anguish claims. But the officers refused to comply with these discovery requests, invoking the physician and psychotherapist privilege. The Municipality moved for an order to compel the officers to sign releases authorizing the disclosure of medical, pharmacy, and psychological counseling records, which the superior court granted. The officers then petitioned this court for review of the order. Upon review, we conclude that the assertion of garden-variety mental anguish claims in an employment discrimination case does not automatically waive the physician and psychotherapist privilege.

## II.    FACTS AND PROCEEDINGS

### A.    The Officers' Claims Under AS 18.80.220

Alvin Kennedy and Eliezer Feliciano (the officers) were police officers with the Anchorage Police Department (APD) who sued the Municipality of Anchorage (the Municipality) for racial discrimination and retaliation. Kennedy is African-American, and Feliciano is Hispanic. They alleged that the Municipality violated state law because APD created a hostile work environment for the officers, in which they were treated disparately because of their races.[1] The alleged discrimination includes racially-profiled traffic stops, disparate discipline for questionable investigative searches, hostile remarks and actions concerning the undercover clothing worn by minority officers, reassignment from other units, denial of performance pay increases and promotions, and a retaliatory police investigation. Both claim damages for mental anguish.

In response to discovery requests from the Municipality, each officer stated how the alleged discrimination had affected him. Kennedy reported that he was "very

---

[1]    *See* AS 18.80.220(a)(1) (prohibiting employment discrimination on the basis of race).

angry, disappointed and occasionally sad." He stated that his "trust levels [were] very low" and that he was "discouraged and disappointed" by the actions of the Municipality and APD.

Feliciano stated that he was "disturbed" by the alleged discrimination. He elaborated:

> The conduct of the APD has given me the feeling that everything I have done throughout my career has been for naught. I feel sad, resulting in lower activity and feeling anxious, empty, hopeless, helpless, worthless, guilty, irritable and restless. I have experienced insomnia, fatigue, loss of energy, aches and pains, and a strained relationship with my wife and children.

Both officers alleged that they had to retire because of the discrimination they suffered at APD. Both asserted that they had not sought any medical treatment or counseling, nor taken any medication related to their mental anguish claims.

## B.    Proceedings Below

The officers filed a complaint in June 2010 alleging employment discrimination. They amended this complaint in June 2011 to include claims for retaliation and mental anguish. The Municipality sought discovery, requesting that the officers (1) identify all medical professionals, counselors, and pharmacies that had provided them services since 2005; (2) produce copies of all medical and counseling records since 2005; and (3) sign releases for the same information. The officers refused to comply with these requests.

In March 2012 the Municipality filed a motion to compel the officers to sign releases for medical, counseling, and pharmacy records. The Municipality argued that it was entitled to discovery of the officers' medical records because the officers had put their medical histories at issue by seeking damages for mental anguish. The Municipality contended that such records were necessary to determine whether there was

any medical evidence of mental anguish and whether the officers' alleged mental anguish was caused by other factors unrelated to their discrimination claims.

The officers opposed the motion to compel. They asserted that they had not received any treatment or medication in response to the alleged racial discrimination, and they would not rely on expert medical testimony to establish damages. They argued that because they merely asserted garden-variety mental anguish claims, there was no waiver of the physician and psychotherapist privilege. The superior court granted the Municipality's motion to compel and ordered the officers to provide the requested medical releases.

We granted review, directing the parties to brief the following issues: (1) Should the assertion of garden-variety mental anguish claims in employment discrimination cases automatically waive a claimant's physician and psychotherapist privilege? (2) If not, (a) How should garden-variety claims of mental anguish be defined? (b) Are the mental anguish claims of each of the officers in this case garden-variety claims? (c) What are the proof limitations that should be imposed on claims for mental anguish where there is no waiver of the physician and psychotherapist privilege?

## III. STANDARD OF REVIEW

Whether the assertion of garden-variety mental anguish claims automatically waives the physician and psychotherapist privilege is a question of law.[2] We exercise our independent judgment on questions of law, adopting "the rule of law that is most persuasive in light of precedent, reason and policy."[3]

---

[2]     *See Mathis v. Hilderbrand*, 416 P.2d 8, 8-10 (Alaska 1966) (reviewing de novo whether plaintiff waived the physician-patient privilege by filing suit for personal injury).

[3]     *Cf. Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988) (quoting
(continued...)

## IV.  DISCUSSION

### A.  Mental Anguish Damages Are Available For Violations Of AS 18.80.220.

Alaska Statute 18.80.220(a)(1) prohibits racial discrimination in hiring, promotion, compensation, and other terms, conditions, or privileges of employment.  In *Johnson v. Alaska State Department of Fish & Game*, we held that damages for mental anguish claims are available for violations of this statute.[4]  We explained that such damages must be limited to "actual damages — that is, to all those damages directly and naturally resulting, in the ordinary course of events, from the injury in question."[5]  We held that while such damages should not be presumed, "[a] complainant's own testimony may establish the fact and the quantum of damages."[6]

The Municipality suggests that our holding in *Johnson* supports a finding of waiver of the privilege in this case.  It contends that applying the privilege would essentially exempt the officers from the requirement to prove mental anguish damages.  This argument is not persuasive.  *Johnson* holds that a complainant's own testimony may

---

[3]    (...continued)
*Brooks v. Brooks*, 733 P.2d 1044, 1055 (Alaska 1987)) (citing *Walsh v. Emerick*, 611 P.2d 28, 30 (Alaska 1980)).

[4]    836 P.2d 896, 914 (Alaska 1991) (construing AS 22.10.020(i) to determine the remedies available for violations of AS 18.80).

[5]    *Id.* at 915 (quoting *Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451, 453 (6th Cir. 1989)) (internal quotation marks omitted) (citing *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 378 N.W.2d 558, 569 (Mich. App. 1985)).

[6]    *Id.* (citing *Cullen v. Nassau Cnty. Civil Serv. Comm'n*, 425 N.E.2d 858, 861 (N.Y. 1981)).

establish the fact and amount of damages; it did not mandate that such testimony must be supported by medical records or expert testimony.[7]

B. **The Assertion Of Garden-Variety Mental Anguish Claims In A Discrimination Case Does Not Automatically Waive A Claimant's Physician And Psychotherapist Privilege.**

1. **The physician and psychotherapist privilege**

As a general matter, the Municipality is entitled to discover any relevant, unprivileged information.[8] The physician and psychotherapist privilege covers "confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional conditions."[9] But this privilege does not apply "to communications relevant to the physical, mental or emotional condition of the patient

---

[7] *See id.* To the extent the Municipality makes a sufficiency-of-the-evidence argument, such an argument is misplaced: Because the parties have not yet presented evidence of their mental anguish at trial, a determination of whether such evidence is sufficient to support an award cannot yet be made.

[8] Alaska Civil Rule 26(b)(1) provides:

Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[9] Alaska R. Evid. 504(b).

in any proceeding in which the condition of the patient is an element of the claim or defense of the patient."[10]

The critical question is whether the officers have placed their mental or emotional conditions at issue by asserting a claim for mental anguish damages and thereby waived the privilege.[11] The Municipality argues that the officers' request for mental anguish damages has put their mental state at issue and suggests this request automatically waives the privilege. The officers respond that they have asserted claims for only the sort of mental anguish that any normal, well-adjusted person would experience under the circumstances, and they consequently urge this court to hold that the assertion of such garden-variety mental anguish claims does not waive the privilege. The officers further contend that their medical records are not relevant because they did not seek medical treatment related to their mental anguish claims and will not rely on any expert testimony or medical records.

### 2. The broad approach to waiver

Other courts have not taken a consistent approach to whether mental anguish claims waive the physician and psychotherapist privilege. Courts taking a broad approach hold that the privilege[12] is waived whenever the patient alleges emotional

---

[10] Alaska R. Evid. 504(d)(1).

[11] *Cf. Trans-World Invs. v. Drobny*, 554 P.2d 1148, 1151 (Alaska 1976) ("[W]e hold that the filing of a personal injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue.") (citing 8 JOHN H. WIGMORE, EVIDENCE § 2389 (McNaughton rev. 1961); *Collins v. Blair*, 268 N.E.2d 95 (Ind. 1971)).

[12] Although this is a question of first impression in Alaska, other courts have considered the same issue under analogous provisions of law. We therefore look to authority from other jurisdictions in interpreting Alaska law.

distress.[13] The rationale behind this broad approach to waiver is rooted in fairness.[14] That is, if a plaintiff claims emotional distress, then a defendant must be able to challenge that claim; for example, psychiatric records may point to sources of emotional distress other than the defendant's conduct.[15]

---

[13] *See Sanchez v. U.S. Airways, Inc.*, 202 F.R.D. 131, 136 (E.D. Pa. 2001) (holding that plaintiffs alleging a violation of Title VII of the Civil Rights Act of 1964 waived the psychotherapist privilege by alleging emotional distress); *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568-69 (S.D. Cal. 1999) (holding that plaintiff in employment discrimination case seeking to recover $1,000,000 for severe emotional distress relied on her emotional condition as an element of her claim and waived the privilege); *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (holding plaintiff in Americans with Disabilities Act suit who alleged defendant did not accommodate her depression waived psychotherapist privilege).

[14] *See, e.g.*, *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 400 (E.D. Cal. 2009) (stating that defendant "should be able to determine whether [p]laintiff's emotional state may have been effected by something other than [d]efendant's alleged actions"); *Doe*, 196 F.R.D. at 569 ("Defendants must be free to test the truth of [plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct."); *Sarko*, 170 F.R.D. at 130 ("[W]e agree that allowing a plaintiff to hide [] behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice.") (quoting *Premack v. J.C.J. Ogar, Inc.*, 148 F.R.D. 140, 145 (E.D. Pa. 1993)) (internal quotations marks omitted).

[15] *See Fitzgerald v. Cassil*, 216 F.R.D. 632, 636-38 (N.D. Cal. 2003) (examining rationales behind different approaches to waiver); *cf. Dudley v. Stevens*, 338 S.W.3d 774, 777 (Ky. 2011), *modified* (June 16, 2011) (holding that claim for garden-variety emotional damages in personal injury action waived privilege because "it would be fundamentally unfair to permit [plaintiff] to allege and prove mental anguish caused by the negligence while denying [defendants] from reviewing her mental health records for the possibility of pre-existing mental conditions").

In one of the cases primarily relied upon by the Municipality, *Hyde v. University of Michigan Regents*,[16] the Michigan Court of Appeals concluded that a plaintiff claiming any type of emotional distress damages in connection with his employment discrimination claim had waived the privilege.[17] The court found that any allegation of emotional distress — including "pain and suffering, mental distress, hurt feelings, embarrassment, and so forth" — automatically waived the privilege; and it held that if the plaintiff wanted to avoid waiver he must withdraw any claim for noneconomic damages.[18] But *Hyde* is distinguishable because it is based in part on a provision in the Michigan civil rules, providing that if a party claims a medical privilege in discovery, he may not thereafter introduce any evidence relating to the condition for which he has claimed the privilege.[19] Moreover, the result in *Hyde* has been criticized by another Michigan appellate court for being contrary to the majority of the courts that have addressed this issue.[20]

---

[16]     575 N.W.2d 36 (Mich. App. 1997).

[17]     *Id.* at 38.

[18]     *Id.* at 42.

[19]     *See id.* Michigan Court Rule 2.314(B)(2) provides: "[I]f a party asserts that the medical information is subject to a privilege and the assertion has the effect of preventing discovery of medical information otherwise discoverable under MCR 2.302(B), the party may not thereafter present or introduce any physical, documentary, or testimonial evidence relating to the party's medical history or mental or physical condition."

[20]     *See LeGendre v. Monroe Cnty.*, 600 N.W.2d 78, 87-90 (Mich. App. 1999) (disagreeing with result in *Hyde* because it contravenes rule that the "in controversy" requirement is not met "by mere conclusory allegations of the pleadings or by mere relevance to the case, and because it is contrary to the results reached by the majority of courts that have addressed the issue"); *see also* Mara Kent & Thomas Kent, *Michigan*
(continued...)

Notably, many of the decisions applying a broad view of waiver involve circumstances that placed the plaintiff's mental condition more directly at issue than the simple assertion of garden-variety mental anguish. These circumstances include: a plaintiff who claimed her employer violated the Americans with Disabilities Act by failing to accommodate her depression,[21] a plaintiff who sought $1,000,000 for severe emotional distress,[22] and plaintiffs who had received treatment for their emotional distress.[23] These allegations of diagnosable conditions, severe emotional distress, and conditions requiring psychiatric treatment are more serious than mere garden-variety claims; as such, we do not find these cases to be particularly persuasive on the issue before us.

### 3.    A narrower approach to waiver

Some courts hold that the physician and psychotherapist privilege is waived only when the plaintiff introduces the privileged communications themselves as

---

[20]     (...continued)
*Civil Rights Claimants: Should They Be Required to Give Up Their Physician-Patient Privilege When Alleging Garden-Variety Emotional Distress?*, 77 U. DET. MERCY L. REV. 479, 479, 499 (2000) (noting that *Hyde* "clearly departs from the overwhelming majority of federal courts that have considered the issue" and criticizing *Hyde* for its failure to analyze relevant federal precedent or consider the potential for abuse by defendants).

[21]     *Sarko v. Penn–Del Directory Co.*, 170 F.R.D. 127, 129-30 (E.D. Pa. 1997).

[22]     *Doe v. City of Chula Vista*, 196 F.R.D. 562, 568-69 (S.D. Cal. 1999).

[23]     *See EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 400 (E.D. Cal. 2009) (noting that plaintiff's treatment for depression "suggests that multiple causation for her emotional distress may exist"); *Sanchez v. U.S. Airways, Inc.*, 202 F.R.D. 131, 133 (E.D. Pa. 2001) (noting that plaintiffs had received treatment for mental and emotional distress caused by the alleged unlawful conduct).

evidence.[24]  Courts adhering to this narrow view generally deem the privacy interests inherent in the privilege to be of paramount importance.[25]  By precluding plaintiffs from relying on the privileged communications to further their own claim, this approach "prevents the privilege from being used as both a shield and a sword."[26]

There is a middle ground. Some courts allow discovery for serious psychological conditions, but recognize the physician and psychotherapist privilege for garden-variety mental anguish claims.[27]  The Missouri Supreme Court adopted this view in *State ex rel. Dean v. Cunningham*, which concerned a claim for emotional distress in the context of a sex discrimination suit.[28]  There, the court held that a plaintiff claiming emotional distress damages in an antidiscrimination suit is protected by the psychotherapist privilege where: " her claim [(1)] is only for such emotional distress and

---

[24]  *See, e.g.*, *Fitzgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003) (holding privilege not waived in housing discrimination suit seeking emotional distress damages where plaintiffs stipulated they would not "rely on any treating psychotherapist or other expert" to prove emotional distress); *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529-31 (N.D. Ill. 1999) (finding no waiver where plaintiff did not intend to offer evidence of his psychotherapy, testify about doctor's advice, or offer independent expert testimony to prove his claim of emotional harm); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 228-30 (D. Mass. 1997) (holding that plaintiff in discrimination suit seeking damages for emotional distress did not waive privilege because she did not introduce communications with psychotherapist into evidence).

[25]  *See, e.g.*, *Vanderbilt*, 174 F.R.D. at 229 (analyzing federal privilege).

[26]  *Fitzgerald*, 216 F.R.D. at 637.

[27]  *See, e.g.*, *EEOC v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 641 (E.D. Wash. 2011) (holding that plaintiff had not waived privilege where he alleged only garden-variety mental anguish and had not affirmatively relied on any privileged communications).

[28]  182 S.W.3d 561, 563-64  (Mo. 2006).

humiliation that an ordinary person would experience under the circumstances or that may be inferred from the circumstances, and (2) is not to be supported by any evidence of medical or psychological treatment for a diagnosable condition."[29] The *Cunningham* court thus based its decision on both the nature of the mental anguish claims and the fact that the plaintiff had not introduced any privileged communications into the lawsuit.

In *Cunningham*, the plaintiff had asserted that she sought no treatment for mental anguish, had not requested a specific dollar amount for damages, and had sought only garden-variety mental anguish damages.[30] In these circumstances, the court concluded that evidence of the plaintiff's "medically or psychologically diagnosable mental or physical condition is irrelevant to the question of whether she suffered 'garden[-]variety' emotional distress as a result of the incidents pleaded" in her sex discrimination claim.[31]

The *Cunningham* court explained that its holding should not prejudice the defendant:

> [T]he corollary to Dean's denial that she has a medically diagnosable injury is that the defense is entitled to bring that fact to the attention of the jury, through her answers to interrogatories, through cross-examination or otherwise. In other words, the defense may show that Dean's emotional distress and humiliation were not so severe as to require medical or physical consultation or treatment.[32]

The court also noted that its holding precluded the plaintiff from claiming a medically diagnosable injury, such as depression: If the plaintiff contended that she was treated for

---

[29]    *Id.* at 569.

[30]    *Id.* at 567.

[31]    *Id.* at 568.

[32]    *Id.* at 569.

depression resulting from the defendants' alleged acts, the privilege would be waived.[33] Many courts in other jurisdictions have adopted a similar approach.[34]

This narrower approach to waiver is consistent with our previous decisions construing Alaska Civil Rule 35(a). This rule provides that a court cannot order a mental examination unless the movant shows that the other party's mental condition is "in controversy" and that there is "good cause" for an examination.[35] Some federal courts have noted that "determining whether the plaintiff has placed her mental condition at issue so as to waive the [psychotherapist] privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested."[36]

Our cases interpreting the "in controversy" requirement of Rule 35(a) are therefore instructive. "To be 'in controversy' means to be 'directly involved in some

---

[33]    *Id.*

[34]    *See, e.g.*, *Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 450 (N.D.N.Y. 2000) ("[A] party does not put his or her emotional condition in issue by merely seeking incidental, 'garden-variety,' emotional distress damages, without more."); *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (holding that plaintiff avoided waiver of privilege where she had restricted her claims to humiliation, embarrassment, anger, and other similar emotions, and was barred from introducing medical evidence at trial); Kent, *supra* note 20, at 490-96 (collecting cases).

[35]    Alaska R. Civ. P. 35(a). Federal Civil Rule 35(a) also provides that a court may order a party whose mental condition is "in controversy" to submit to a mental examination.

[36]    *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 557 (N.D. Ga. 2001); *see also Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 n.8 (D.N.J. 2000) (noting that "[i]n the analogous context of requiring a plaintiff to undergo a mental examination pursuant to Federal Rule of Civil Procedure 35(a), courts have generally found that 'garden[-]variety' emotional distress does not satisfy the rule's requirement that the plaintiff's mental condition must be 'in controversy' " and citing cases).

material element of the cause of action or a defense.' "[37] We have cautioned that this requirement should not be disregarded:

> Civil Rule 35(a) should be invoked cautiously, only after the movant has demonstrated sufficient justification for a mental or physical examination. This ensures that trial courts can guard against misuse of Civil Rule 35(a) as an unwarranted mechanism for discovering mental or physical issues absent good reason to believe that such issues actually exist.[38]

Most other courts addressing this issue have held that employment discrimination plaintiffs do not place their mental condition "in controversy" by alleging garden-variety emotional distress.[39]

We find the rationale underlying this narrower approach to waiver more persuasive. Garden-variety mental anguish claims are sufficiently limited in scope to alleviate the Municipality's concerns regarding fairness to defendants. If the officers do not allege that they have a medically diagnosable injury or that they have received

---

[37] *Alyssa B. v. State, Dep't of Health & Soc. Servs.*, 123 P.3d 646, 650 (Alaska 2005) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 99 (Alaska 1993)).

[38] *Id.* at 650-51 (footnote omitted).

[39] *Stevenson*, 201 F.R.D. at 553; *see also Ricks v. Abbott Labs.*, 198 F.R.D. 647, 648 (D. Md. 2001) (noting that the majority of courts have held that a plaintiff's mental condition is not placed "in controversy" by simply making a claim for emotional damages as part of an employment discrimination claim, unless she asserts a specific cause of action for the infliction of emotional distress, alleges a specific disorder, alleges unusually severe distress, offers expert testimony in support of her claim for emotional distress, or concedes that her mental condition is "in controversy"); *LeGendre v. Monroe Cnty.*, 600 N.W.2d 78, 87-90 (Mich. App. 1999) (collecting cases).

treatment related to their emotional distress, the Municipality is entitled to bring this information to the jury's attention.[40]

Moreover, wide-ranging inquiry into an individual's medical and psychiatric history could deter legitimate discrimination claims.[41] Litigants should not be forced to choose between disclosing highly personal medical information and asserting claims for distress that any healthy individual would likely suffer as a result of discrimination. Our cautious approach should achieve an appropriate balance between a defendant's interest in fair disclosure, the privacy interest protected by the physician and psychotherapist privilege, and the societal values promoted by state law.[42]

C.      Some Of The Mental Anguish Claims In This Case Are Garden-Variety Claims.

The officers assert that they suffered only garden-variety mental anguish as a result of the Municipality's discriminatory conduct. They point out that they did not

---

[40]      *See State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 569 (Mo. 2006); *see also Fitzgerald v. Cassil*, 216 F.R.D. 632, 638 (N.D. Cal. 2003) (listing the defense's ability to cross-examine the plaintiff "about other stressors or contributing factors that may explain or have contributed to the alleged emotional distress," present other evidence to show that a plaintiff's description of her distress is exaggerated, and elicit from the plaintiff the fact that the plaintiff did not seek treatment or therapy for such distress as "numerous avenues" through which a defendant can make its case without access to confidential medical records).

[41]      *Cunningham*, 182 S.W.3d at 566; *see also Taylor v. ABT Elecs., Inc.*, No. 05 C 576, 2007 WL 1455842, at *2-3 (N.D. Ill. May 14, 2007) (holding assertion of garden-variety emotional distress claims does not waive privilege and noting that "allowing such discovery would discourage people from coming forward to bring these kinds of [civil rights] claims if as a result their whole life becomes an open book") (internal quotation marks omitted).

[42]      AS 18.80.200(b) ("[I]t is the policy of the state and the purpose of this chapter to eliminate and prevent discrimination in employment . . . .").

receive medical treatment for emotional distress and that their claims can be established by lay testimony. They suggest that their reactions to APD's alleged discriminatory conduct were normal considering the stresses unique to their positions as police officers.

The Municipality argues that the officers' claims are not garden-variety claims. Specifically, it asserts that Feliciano's claims of aches and pains, fatigue, insomnia, loss of energy, and relationship issues with his family are not the foreseeable result of a hostile work environment. The Municipality contends that Feliciano's physical symptoms could be due to a number of medical ailments and that his emotional reactions are not typical or proportionate to the magnitude of the alleged discrimination. The Municipality also argues that Kennedy's claims are not garden-variety claims because they "go further than expressing mere emotions."

"Garden-variety" means ordinary or commonplace.[43] "Garden[-]variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized."[44] They are restricted to "the negative emotions that [a plaintiff] experience[s] essentially as the intrinsic result of the defendant's alleged conduct."[45] Claims fall within the ambit of garden-variety anguish where they "do[] not exceed the suffering and loss an ordinary person would likely experience in similar circumstances, and constitute[] matters that are

---

[43] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 480 (10th ed. 1998); *see also* GARNER'S DICTIONARY OF LEGAL USAGE 386 (3d ed. 2011) (defining garden variety as "of the ordinary or familiar kind").

[44] *Jacobs v. Conn. Cmty. Technical Colls.*, 258 F.R.D. 192, 196 (D. Conn. 2009) (quoting *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009)) (internal quotation marks omitted).

[45] *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999).

within the everyday experience of the average juror."[46] Generally, garden-variety claims allege "the kind of emotional distress or humiliation that an ordinary person would experience in such circumstances."[47]

Several courts have distinguished garden-variety anguish from more serious conditions, such as depression.[48] One court, for example, allowed a plaintiff to present evidence of "humiliation, embarrassment, and other similar emotions," such as anger, but precluded evidence "about symptoms or conditions that she suffered (e.g., sleeplessness, nervousness, depression)."[49] Some courts have identified the relevant inquiry as whether the condition required medical treatment.[50] Others have placed temporal boundaries on

---

[46] *EEOC v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (quoting *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 632 (S.D. Cal. 1999)) (internal quotation marks omitted).

[47] *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 564 (Mo. 2006).

[48] *See id.* at 569 (stating that plaintiff's allegation that she was treated for depression resulting from defendants' alleged acts will waive the privilege).

[49] *Santelli*, 188 F.R.D. at 309; *see also Jacobs*, 258 F.R.D. at 196-97 (deeming allegations of insomnia, depression, inability to focus, and anxiety as sufficiently serious to trigger waiver of the privilege). *But see Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 204 (D. Mass. 2000) (holding that allegations of "mental anguish, severe emotional distress, humiliation, personal indignity, emotional pain, . . . embarrassment, and anxiety" qualified as garden-variety claims).

[50] *See Taylor v. ABT Elecs., Inc.*, No. 05 C 576, 2007 WL 1455842, at *2 (N.D. Ill. May 14, 2007) ("[T]he very nature of 'garden[-]variety' emotional distress damages contemplates that they are not necessarily medically based, but rather compensation for 'humiliation, embarrassment, and similar emotions.' "); *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 480 (S.D.N.Y. 2001) ("A 'garden[-]variety' emotional distress claim is one that did not require medical treatment." (citing *Luciano v. Olsten Corp.*, 912 F. Supp. 663, 673 (E.D.N.Y. 1996))).

claims, indicating that a claim for mental suffering is not a garden-variety claim if the plaintiff alleges ongoing or permanent emotional distress.[51]

We find several of these limitations appropriate. A claim is not a garden-variety anguish claim if it involves a diagnosable mental disease or disorder, medical treatment or medication, longstanding, severe, or permanent emotional distress, physical symptoms, or expert testimony. Garden-variety claims will typically involve *emotions* rather than *conditions*. Limiting potential claims in this way ensures that the alleged distress will fall within the common experience of jurors such that they can readily understand the nature or severity of the emotional distress.[52]

In this case, Kennedy described his mental anguish claim by referring to simple emotions. He asserted that he was "very angry, disappointed, and occasionally sad." He stated that his "trust levels [were] very low" and that he was "discouraged and disappointed" by the actions of the APD. Because Kennedy only references his emotions, his claim is a garden-variety mental anguish claim.

Feliciano described more severe symptoms. He stated that he was "disturbed" by the alleged discrimination. He elaborated:

---

[51] *See Verma v. Am. Express*, No. C 08-2702 SI, 2009 WL 1468720, at *2 (N.D. Cal. May 26, 2009) (finding emotional distress claims were not garden variety if plaintiff stated that she continued to experience extreme emotional distress nearly two years after her alleged wrongful termination); *cf. Serramonte*, 237 F.R.D. at 224 (noting that plaintiff no longer had symptoms of distress and concluding that claims for emotional distress were garden variety).

[52] *See Ricks v. Abbott Labs.*, 198 F.R.D. 647, 649 (D. Md. 2001) ("A trier of fact . . . does not need help understanding the ordinary grief, anxiety, anger, and frustration that any person feels when something bad occurs."); *see also Cunningham*, 182 S.W.3d at 568.

> The conduct of the APD has given me the feeling that everything I have done throughout my career has been for naught. I feel sad, resulting in lower activity and feeling anxious, empty, hopeless, helpless, worthless, guilty, irritable[,] and restless. I have experienced insomnia, fatigue, loss of energy, aches and pains, and a strained relationship with my wife and children.

Feliciano also asserted that he "had no confidence" and felt he had to retire from APD.

As currently framed, Feliciano's claim goes beyond the scope of mere emotions. Feliciano's symptoms could suggest that he may suffer from a diagnosable mental condition. Because this claim does more than describe Feliciano's emotions, it is not a garden-variety claim.

### D. Other Issues

The Municipality argues that strict limitations should be imposed on proof of mental anguish when there is no waiver of the physician and psychotherapist privilege. It contends that the officers' claims should be based solely on their own testimony and requests various other specific limitations on the substance of such testimony.

The appropriate limitations on proof should mirror the limits placed on permitted claims. Therefore, under the test we adopted above, the officers are precluded from introducing evidence of a diagnosable disease or disorder,[53] medical treatment or medication,[54] longstanding, severe, or permanent distress,[55] physical symptoms,[56] or

---

[53] *Cf. Valiavacharska v. Celaya*, No. 10-4847 JSC, 2011 WL 4479341, at *3 (N.D. Cal. Sept. 26, 2011) (precluding claims of post-traumatic stress disorder or nightmares).

[54] *Cf. Epstein*, 139 F. Supp. 2d at 480 ("A 'garden[-]variety' emotional distress claim is one that did not require medical treatment." (citing *Luciano*, 912 F.
(continued...)

expert testimony.[57] Subject to these limitations on content, nothing precludes lay testimony by individuals other than the claimants. Such limitations on proof will prevent the privilege from being used as both a "shield and a sword." [58]

On remand, Feliciano should be permitted the opportunity to limit his claim to garden-variety mental anguish.[59] If he does not, then he may be ordered to provide the requested medical discovery. Any required release should be reasonably limited to the relevant time frame and to those records that could be relevant to the types of conditions

---

[54]     (...continued)
Supp. at 673)).

[55]     *See Valiavacharska*, No. 10-4847 JSC, 2011 WL 4479341, at*3 (limiting evidence of emotional distress to "that what an ordinary person subjected to similar circumstances would experience and was not prolonged or ongoing"); *Verma*, No. C 08-2702 SI, 2009 WL 1468720, at *2 (holding that plaintiff's "claims for emotional distress — and any proof of them to be presented at trial — shall be limited to the periods during her employment when she allegedly experienced harassment, retaliation and discrimination, and the period immediately following her allegedly wrongful termination").

[56]     *See Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (permitting plaintiff to present evidence of "humiliation, embarrassment, and other similar emotions," but precluding plaintiff from introducing evidence "about symptoms or conditions that she suffered").

[57]     *Cf. Fitzgerald v. Cassil*, 216 F.R.D. 632, 639 (N.D. Cal. 2003) (concluding privilege not waived because plaintiffs stipulated they would not affirmatively rely on any treating psychotherapist or other expert to prove emotional distress damages).

[58]     *See id.* at 637.

[59]     *See Verma*, No. C 08-2702 SI, 2009 WL 1468720, at *2 (permitting plaintiff to limit her emotional distress claims as necessary to avoid waiver of the privilege, and construing her complaint accordingly).

asserted. Finally, we decline to address issues outside the scope of our order granting review.[60]

## V. CONCLUSION

We REVERSE the superior court's order granting the Municipality's motion to compel discovery and REMAND to the superior court for proceedings consistent with this opinion.

---

[60] Both parties make a number of additional arguments in their briefs. The Municipality urges us to impose a limit on damages awarded under AS 18.80.220. The officers make arguments implicating the constitutional right to privacy and the Health Insurance Portability and Accountability Act. But these issues were not designated for review and so we decline to address them here. *See Green v. State*, 544 P.2d 1018, 1020 n.6 (Alaska 1976) (declining to review issue not raised in petition for review).